UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS  DIVISION


| | | |
|---|---|---|
| RITA F. GEE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | 1:07-cv-01604-SEB-JMS |
| vs. | ) | |
| | ) | |
| CITY OF LAWRENCE, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |


**ENTRY GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT**


This cause is before the Court on Defendant City of Lawrence's ("City") Motion for Summary Judgment [Docket No. 24], filed on December 23, 2008.  Plaintiff Rita F. Gee brought her complaint pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000(e) *et seq.*, and the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601(b)(2)(A).  Gee claims that the City subjected her to a hostile work environment and retaliated against her for reporting violations and exercising her rights under law.  For the reasons detailed below, Defendant's Motion for Summary Judgment is <u>GRANTED</u>.

**Factual Background**

Plaintiff, Rita Gee, was employed by Defendant, the City of Lawrence, as Property Room Clerk for the City Police Department ("Department") from June 6, 1994, to May 18, 2007.  Compl. ¶ 5.  According to Gee, on or about August 25, 2006, she was subjected to an "unwelcome sexual comment" by Lt. James Parish, also an employee, while she was performing her duties for the City.  Compl. ¶ 8, Def.'s Br. in Supp. at 1-2. Lt. Parish reportedly compared Gee to a sexually transmitted disease.  Def.'s Br. in Supp. at 2.  Gee objected to the comment and proceeded to make her complaints known to her supervisor, and thereafter to the City's Human Resources Department.  Compl. ¶¶ 8, 10; Pl.'s Resp. at 1.

Gee also sought the counsel of Capt. Erika Schneider, a ranking officer who had previously been a victim of a separate incident of harassment at the Department.  Pl.'s Resp. at 3.  Capt. Schneider counseled Gee on her options and reassured her that she was in fact a victim.  Def.'s Br. in Supp. at 2.  Although Capt. Schneider was generally supportive,  Def.'s Br. in Supp. at 2 (citing Gee Dep. at 24), she also warned Gee that reporting the incident could have the effect of causing other employees not to trust her and to "be careful" around her.  Pl.'s Resp. at 4 (citing Gee Dep. at 168-69).

Following notice of Gee's complaint, the City conducted an investigation of the incident resulting in Lt. Parish's receipt of formal counseling on the proper use of language around staff.  Def.'s Br. in Supp. at 2.  Lt. Parish made no similar comments to Gee thereafter, although, in a subsequent incident in December, another employee

reportedly teased Gee about being pregnant when she had called in sick one day.  Def.'s Br. in Supp. at 4.  Gee lodged no complaint regarding this second incident; nonetheless, Gee's supervisor initiated an investigation resulting in a one-day suspension of the offending employee.  Def.'s Br. in Supp. at 4.

Gee claims that, after her initial complaint regarding Lt. Parish's comment, she was subjected to retaliatory action by the City's employees, including changes in her employment duties, dress code, and level of supervision.  She also alleges that she was given "unwarranted disciplinary actions/reprimands," was audited without warning, was ordered to do work normally assigned to other employees, and was subjected to terms and conditions of employment different from other employees.  Compl. ¶ 9.[1]

During this time period, various administrative and organizational changes were occurring at the Department.  In December 2006, a new Chief of Police, Bryan Grandy, took over the leadership of the Department.  Def.'s Br. in Supp. at 3.  He stressed adherence to the "chain of command" in managing the Department's business, and reorganized the Department into three separate divisions.  Def.'s Br. in Supp. at 3-4.  Gee's position shifted from the old "detectives" division into the new "administration" division, placing Gee under new immediate and division supervisors.  Def.'s Br. in Supp.

---

[1]Gee recounts in her deposition and in personal notes (see Def.'s Br. In Supp., Ex. 19, Gee Notes) many other incidents in which she felt actions by her coworkers or the Department were thinly veiled retaliation or discrimination, ranging from other employees' failure to acknowledge her in the hallway (Gee Notes at 19) to rumors concerning her employment status. Gee Notes at 13.  While acknowledging Gee's subjective belief that these incidents constitute retaliation and discrimination, we decline to recount every alleged incident in detail.  The legal implications of these incidents are discussed *infra* Part II.A.

at 4 (citing Gee Dep. at 44).  Capt. Schneider was assigned to head the new administration division, and also serve as the Department's Equal Employment Opportunity Commission ("EEOC") officer.  Def.'s Br. in Supp. at 4.  Sgt. Mike Lair became Gee's new direct supervisor.  Def.'s Br. in Supp. at 4.

Under this new administrative arrangement, Gee's hours of employment changed and new job tasks were assigned to her, such as covering lunch breaks for other employees and researching accident reports.  Def.'s Br. in Supp. at 4-6.  Gee also was assigned to assist Chief Grandy's administrative assistant, Amber Kriech, with certain tasks.  Def.'s Br. in Supp. at 6.  When maintenance activities were conducted on air conditioning units located in an outside storage area for property room items, Gee and other employees were required to sit outside to maintain a watch over the property.  Def.'s Br. in Supp. at 10.[2]

In January of 2007, Lt. Parish was reassigned to the administrative division to become an assistant to Capt. Schneider.  Def.'s Br. in Supp. at 5.  Gee's personal notes indicate that she felt she was unable to work for Lt. Parish, although the record does not indicate that she ever shared these notes with anyone at the Department.  Def.'s Br. in Supp. at 5-6.[3]

_____

[2]Employees throughout the division, including Gee, were also asked to log their daily activities in order to provide information for revising job descriptions.  Def.'s Br. in Supp. at 5.

[3]Gee also expressed in these notes that she felt Lt. Parish should have received additional counseling or discipline.  Def.'s Br. in Supp., Ex. 19, Gee Notes at 16.

On January 30, 2007, Lt. Parish distributed a memorandum to all support staff informing them of a new "business casual" dress code.  Def.'s Br. in Supp. at 6.  Although Gee believed this new dress code specifically targeted her, she acknowledges that other employees also had to change the style of their attire after the new dress code was imposed.  Def.'s Br. in Supp. at 6-7 (citing Gee Dep. at 91).  Lt. Parish issued a second memorandum to Gee, instructing her to complete her currently assigned tasks by a certain date, and to report to Kriech to assist in transcribing certain tapes.  Def.'s Br. in Supp. at 6.  Gee's response to the memoranda was to contact the City's Human Resources director.  Def.'s Br. in Supp. at 6.

The following day, on January 31, Gee was called into a meeting with Sgt. Lair and Lt. Parish.  Pursuant to a new "performance counseling" system instituted by Chief Grandy, Sgt. Lair provided Gee with three "performance counseling memoranda" detailing three specific occasions in which Gee's job performance was unacceptable or needed improvement.  Def.'s Br. in Supp. at 7.  The first memorandum detailed Gee's threat to contact Human Resources in response to the two January 30th memoranda from Lt. Parish.  The performance counseling memoranda urged Gee to follow the Department's chain of command and cautioned Gee against "going outside the department."  Def.'s Br. in Supp. at 7.  Gee, following established procedures, submitted a rebuttal asserting that she had never gone outside the chain of command to speak with Human Resources.  Def.'s Br. in Supp. at 7-8.  However, she later admitted that she had

contacted Human Resources in an effort to speak with the City's Human Resources director.  Def.'s Br. in Supp. at 8.

The second and third counseling memoranda concerned Gee's failures to complete assignments as ordered.  Specifically, according to the second memorandum, Gee turned in a report covering only thirteen months of accidents at a particular intersection, despite being asked to compile a report covering eighteen months of accidents.  The third memorandum related to Gee's refusal to assist Kriech by typing statements, after Kriech had emailed Gee requesting help and indicating that Capt. Schneider had directed her to seek help from Gee.

In response to each memorandum, Gee submitted a rebuttal response explaining her allegedly insufficient performance.  Def.'s Br. in Supp. at 8.  Gee also contested the accuracy of allegations set out in the memoranda.  Def.'s Br. in Supp., Ex. 19, Gee notes at 24-25.  Gee's rebuttal to the second memorandum, for example, stated that she was busy, and that she had completed the report as directed after her initial incomplete report was returned.  In response to the third memorandum, Gee rejoined that she believed orders had to be given directly by the supervisor, and therefore she considered Kriech's email a "request," not an order.  Def.'s Br. in Supp. at 8.

At the January 31 counseling session with Sgt. Lair and Lt. Parish, Gee also received a copy of a memorandum recommending a written reprimand for her failure to complete tasks as ordered and for bypassing the chain of command by going directly to the division head, Capt. Schneider, about an issue without first discussing it with her

6

immediate supervisor.  Def.'s Br. in Supp. at 8-9.  Gee submitted a written rebuttal to this

recommendation as well, in which she denied the factual basis for the reprimand.  Def.'s

Br. in Supp. at 9.  Chief Grandy issued a written reprimand of Gee on February 21, 2007.

Def.'s Br. in Supp. at 9.

On February 21, Gee received a call from a retired police officer advising her of a

rumor that her employment with the Department was going to be terminated in two days.

Def.'s Br. in Supp. at 9.  Later that day, Gee left work for lunch and enlisted her husband

to call in to report to her supervisor that she would not be returning that afternoon due to

an "accident or emergency."  Def.'s Br. in Supp. at 9.  Instead of returning to work, Gee

traveled to the EEOC office where she filed a complaint.  Def.'s Br. in Supp. at 9.  The

following two days, February 22 and 23, Gee was off work because of a previously

scheduled medical procedure.  Def.'s Br. in Supp. at 9.

When Gee returned to work on February 26, Capt. Schneider called her into a

meeting and informed her that, because Lt. Parish was in her chain of command, "she had

to talk to him."  Def.'s Br. in Supp. at 9.  Gee responded that she did not want to talk to

Lt. Parish, and would not do so.  Def.'s Br. in Supp. at 10 (citing Schneider Aff., Ex. A).

Based on Gee's refusal to adhere to the department's chain of command,[4] Capt. Schneider

recommended another written reprimand, and a written reprimand was issued by Chief

Grandy on March 15, 2007.  Def.'s Br. in Supp. at 10.

---

[4]Gee's Response highlights some confusion among police department supervisors
concerning whether there are ever situations in which an employee can bypass the chain of
command. See Pl.'s Resp. At 15-17.

Upon receipt of this reprimand from Chief Grandy, Gee immediately returned to the property room and called her doctor to schedule an appointment for the next day, March 20, 2007. Def.'s Br. in Supp. at 10 (citing Gee Dep. at 39). The following day, Gee advised Sgt. Lair that she needed to leave that afternoon for a doctor's appointment. Because Gee had not given sufficient notice of her need to be away from her duties thus preventing Sgt. Lair from covering Gee's responsibilities, Sgt. Lair prepared yet another counseling memorandum, this one concerning Gee's failure to provide adequate notice prior to doctor appointments. Def.'s Br. in Supp. at 10. That afternoon, Gee's doctor put her on leave from work for six weeks, from March 21 to April 30, 2007. Def.'s Br. in Supp. at 10; Compl. ¶ 12. Because of her extended leave, Gee did not receive Sgt. Lair's counseling memorandum relating to the need to give notice until she returned to work. Def.'s Br. in Supp. at 10.

Two weeks after Gee returned to work, Sgt. Lair issued another memorandum to her from Capt. Schneider partially denying her request for vacation leave on Monday, May 28. Def.'s Br. in Supp. at 11. Gee protested the denial on the grounds that May 28 was Memorial Day and City offices were to be closed for the holiday. Def.'s Br. in Supp. at 11.

After a reportedly animated discussion with Sgt. Lair about the denial of her vacation request, Gee took up the issue with Capt. Scott Evans. Def.'s Br. in Supp. at 11. Capt. Evans told Gee that the denial obviously was a mistake, and called Lt. Parish to his

8

office to address the problem.  Def.'s Br. in Supp. at 11.[5]  Lt. Parish agreed that the denial

was a mistake and stated several times that he would fix it.  Def.'s Br. in Supp. at 11

(citing Evans Aff. at ¶ 7; Gee Dep. at 153).  As Lt. Parish was leaving Capt. Evans's

office, Gee uttered some inaudible comment to him, and when Lt. Parish turned to

respond, Gee slammed the door in his face, nearly hitting him.  Def.'s Br. in Supp. at 11

(citing Evans Aff. at ¶ 6).  Capt. Evans admonished Gee that she could not treat her

supervisor like that and instructed her to open the door immediately.  By the time she

complied, Lt. Parish was gone.  Def.'s Br. in Supp. at 11.  Gee denies slamming the door

in Lt. Parish's face, but concedes that she did shut the door loudly.  Pl's Resp. at 23

(citing Gee Dep. at 149).

     A few minutes later, Capt. Evans received a call from Deputy Chief Rutallie

inquiring about the incident.  Capt. Evans reported the events that had transpired,

prompting Deputy Chief Rutallie to summon Gee to his office and to dismiss her for the

remainder of the day.  Def.'s Br. in Supp. at 12.  The following day, Capt. Schneider

prepared a report on the incident, which included her recommendation that Gee's

employment be terminated.  Def.'s Br. in Supp. at 12.  After reviewing Capt. Schneider's

recommendation, along with the attached reports from Capt. Evans, Lt. Parish, and Sgt.

Lair, Chief Grandy decided to terminate Gee's employment immediately.  Def.'s Br. in

Supp. at 12.  According to the City, Gee's termination was the culmination of numerous

---

[5]Gee expressed concern to Capt. Evans that Lt. Parish would reprimand her for discussing the problem outside her chain of command.  Pl's Resp. at 22.

problems she had caused, not just the alleged door-slamming incident.  Pl.'s Resp. at 24 (citing Grandy Dep. at 51-52; Parish Dep. at 90-91; Schneider Dep. at 103-04).

This lawsuit was filed by Gee to challenge the lawfulness of her employment termination on grounds of gender discrimination and retaliation.


## Legal Analysis

### I.      Standard of Review

Summary judgment is appropriate when the record establishes that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  Disputes concerning material facts are genuine where the evidence is such that a reasonable jury could return a verdict for the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  In deciding whether genuine issues of material fact exist, the court construes all facts in a light most favorable to the non-moving party and draws all reasonable inferences in favor of the non-moving party.  See id. at 255. However, neither the "mere existence of some alleged factual dispute between the parties," id. at 247, nor the existence of "some metaphysical doubt as to the material facts," Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986), will defeat a motion for summary judgment.  Michas v. Health Cost Controls of Illinois, Inc., 209 F.3d 687, 692 (7th Cir. 2000).

The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323. The party seeking summary judgment on a claim on which the non-moving party bears the burden of proof at trial may discharge its burden by showing an absence of evidence to support the non-moving party's case. Id. at 325.

Summary judgment is not a substitute for a trial on the merits, nor is it a vehicle for resolving factual disputes. Waldridge v. Am. Hoechst Corp., 24 F.3d 918, 920 (7th Cir. 1994). Thus, after drawing all reasonable inferences from the facts in favor of the non-movant, if genuine doubts remain and a reasonable fact-finder could find for the party opposing the motion, summary judgment is inappropriate. See Shields Enter., Inc. v. First Chicago Corp., 975 F.2d 1290, 1294 (7th Cir. 1992); Wolf v. City of Fitchburg, 870 F.2d 1327, 1330 (7th Cir. 1989). But if it is clear that a plaintiff will be unable to satisfy the legal requirements necessary to establish her case, summary judgment is not only appropriate, but mandated. See Celotex, 477 U.S. at 322; Ziliak v. AstraZeneca LP, 324 F.3d 518, 520 (7th Cir. 2003). Further, a failure to prove one essential element "necessarily renders all other facts immaterial." Celotex, 477 U.S. at 323.

## II.   Sex Discrimination and Harassment Claim

Gee's first complaint is that she was subjected to a hostile work environment, in violation of Title VII, due to the offensive comments directed at her by Lt. James Parish

and other employees as well as the generally hostile and retaliatory acts by her coworkers and superiors at the Department.

In Meritor Sav. Bank v. Vinson, 477 U.S. 57 (1986), the Supreme Court ruled that the "terms, conditions, or privileges of employment" provision in Title VII includes *environmental* conditions of employment, and not just "economic" or "tangible" discrimination. Id. at 64. Therefore, a plaintiff may establish a violation of Title VII by showing that discrimination based on her membership in a protected class has created a hostile or abusive work environment. As a matter of law, for a hostile work environment to rise to the level of a Title VII violation, a plaintiff must show: "(1) that the work environment was both subjectively and objectively offensive; (2) that the harassment was based on membership in a protected class; (3) that the conduct was severe or pervasive; and (4) that there is a basis for employer liability." Mendenhall v. Mueller Streamline Co., 419 F.3d 686, 691 (7th Cir. 2005). In considering whether a work environment is hostile, courts consider factors such as the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Hilt-Dyson v. City of Chicago, 282 F.3d 456, 463 (7th Cir. 2002), cert. denied, 537 U.S. 820 (2002) (quoting Faragher v. City of Boca Raton, 524 U.S. 775, 787-88 (1998)). Conduct that is unpleasant, but not severe or pervasive, does not constitute a hostile work environment prohibited by Title VII. See Saxton v. American Telephone and Telegraph Co., 10 F.3d 526, 533 (7th Cir. 1993); Stevens v. Life Care Centers of America, 2008

12

U.S. Dist LEXIS 74555, at *53 (S.D. Ind. 2008) (Barker, J.).[6]

The primary act of discrimination and harassment cited by Gee is the off-color comment made by Lt. Parish in which he compared her to a sexually transmitted disease. She also points to a later comment by another department employee who joked about Gee being pregnant on the morning when she called in sick.[7]  We find that these comments fail to qualify for sanctions under Title VII.  While the comments appear to have been based on Gee's membership in a protected class, were subjectively offensive to her, and could reasonably be considered objectively offensive, the Seventh Circuit has set a "high bar for what constitutes severe and pervasive harassment." Baker v. Starwood Hotel and Resort Worldwide, 1999 U.S. Dist. LEXIS 9414, at *9, n.24 (E.D. La. 1999); see also Koelsch v. Beltone Electronics Corp., 46 F.3d 705 (7th Cir. 1995).  The alleged harassment must be "both subjectively and objectively so severe or pervasive" as to alter conditions of employment.  Whitaker v. Northern Illinois Univ., 424 F.3d 640, 645 (7th

---

[6]Well-established Seventh Circuit precedent holds that "Title VII does not mandate admirable behavior from employers, thus simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment."  Haugerud v. Amery School Dist., 259 F.3d 678, 693 (7th Cir. 2001) (quotations omitted).

[7]Gee's complaint also includes a laundry list of allegedly harassing actions which Gee frames as retaliation for her decision to complain about Lt. Parish's offensive comment.  Upon careful review, we find that none of these actions contributes, as a matter of law, to our analysis of Gee's claim for harassment or discrimination.  To be actionable under Title VII, harassment must be based on membership in a protected class, Mendenhall, 419 F.3d at 691, which includes race, color, religion, sex, or national origin.  42 U.S.C. § 2000e-2(a)(1).  Only the two comments cited by Gee implicate her membership in a protected class.  Certain other acts are admittedly relevant to our analysis of Gee's retaliation claim, but none is legally sufficient to form the basis of Gee's harassment and discrimination claim.

13

Cir. 2005) (quoting <u>Wyninger v. New Venture Gear, Inc.</u>, 361 F.3d 956, 975 (7th Cir. 2004)).  Courts evaluate severity by considering surrounding circumstances, including the frequency of the offensive conduct, whether the conduct was threatening and/or humiliating, and whether the harassment unreasonably interfered with the employee's work.  <u>Id.</u>  "[O]ccasional vulgar banter, tinged with sexual innuendo, . . . would be neither pervasive nor offensive enough to actionable."  <u>Rogers v. City of Chicago</u>, 320 F.3d 748, 752, (7th Cir. 2003).

We cannot conclude that Gee's allegations add up to more than a very few isolated incidents of boorish behavior and adolescent humor.  Although obviously offensive, especially in an employment setting, such behavior does not rise to the level of severity necessary to be actionable as a hostile environment under Title VII.


## III.   Retaliation Claim

"Title VII protects employees 'from retaliation for complaining about the types of discrimination it prohibits."  <u>Antonetti v. Abbott Laboratories</u>, __F.3d__, No. 08-1647, Slip Op. at 10 (7th Cir. April 21, 2009) (quoting <u>Miller v. Am. Family Mut. Ins. Co.</u>, 203 F.3d 997, 1007 (7th Cir. 2000)).  Gee cites numerous actions which she construes as impermissible retaliation.  She alleges that, after she made a good faith complaint regarding Lt. Parish's offensive comment, she was "targeted" by superiors.  Furthermore, she contends that she was subject to changes in her work conditions which were intended to punish her for making the complaint and discourage her from making future

complaints.  According to Gee, "it quickly became clear . . . that a woman simply could not report sexual harassment by a superior without suffering dire consequences."  Pl.'s Resp. at 2.[8]   A plaintiff has two methods of proof available to demonstrate retaliation: the direct method of proof, or the indirect method, also called the "burden-shifting" method.  See Moser v. Ind. Dep't of Corr., 406 F.3d 895, 903 (7th Cir. 2005).  Under the direct approach, a plaintiff must present sufficient evidence to demonstrate that she (1) opposed an unlawful employment practice, that (2) she suffered an adverse employment action, and (3) that there is a causal connection between the two.  Haywood v. Lucent Techs., Inc., 323 F.3d 524, 531 (7th Cir. 2003).

As discussed above, Gee has not established that she suffered unlawful discrimination or harassment.  Even though a cause of action for retaliation does not require that a plaintiff be correct in her belief that she was subject to conduct prohibited by Title VII, she is entitled to relief so long as she can establish that she held "a sincere and reasonable belief" that she was opposing conduct that violated Title VII.  See Stevens, 2008 U.S. Dist LEXIS 74555, at *53 (citing Hunt-Golliday v. Metropolitan Water Reclamation District of Greater Chicago, 104 F.3d 1004, 1014 (7th Cir. 1997)).  "The objective reasonableness of the belief is not assessed by examining whether the conduct was persistent or severe enough to be unlawful, but merely whether it falls into

---

[8]Curiously, Gee notes that Capt. Schnieder suffered a similar problem with harassment at the Lawrence Police Department.  See Pl.'s Resp. at 3; Def.'s Br. in Supp. at 2.  Yet, during the time Gee was suffering the alleged retaliation, Schneider was promoted to the rank of Captain, made the department's EEOC officer, and was promoted to head of the Administrative division.  See Pl.'s Resp. at 3; Def.'s Br. in Supp. at 4.

the category of conduct prohibited by the statute." Magyar v. Saint Joseph Regional Medical Center, 544 F.3d 766, 771 (7th Cir. 2008).  We conclude that Gee did hold a reasonable and sincere belief that she was opposing an action prohibited by Title VII.

Next, Gee must show that she suffered an adverse employment action.  In addition to her termination, which clearly constitutes an adverse employment action, Atanus v. Perry, 520 F.3d 662, 677 (7th Cir. 2008), Gee also alleges additional acts of retaliation, including being given additional job duties, subjected to changes in dress code, receiving unwarranted disciplinary reprimands, and being subjected to changes in hours of employment, etc.  See Compl. at ¶ 9.  Gee correctly notes that a retaliatory adverse employment action may encompass a range of behavior much broader than that prohibited by Title VII's discrimination and harassment provision.  See Lewis v. Indiana Women's Prison, 2007 U.S. Dist. LEXIS 63082, at *11-12 (S.D. Ind. 2007).

However, "not everything that makes an employee unhappy is an actionable adverse action." Cole v. Illinois, __ F.3d __, 299 U.S. Dist. LEXIS 7167, at *12 (7th Cir. 2009) (quoting Oest v. Ill. Dep't of Corr., 240 F.3d 605, 613 (7th Cir. 2001)).  Rather, an employee must show that material harm has resulted from the adverse action.  Traylor v. Brown, 295 F.3d 783, 788 (7th Cir. 2002) (internal quotations omitted).  In other words, "the challenged action must result in some significant change in employment status." Bell v. EPA, 232 F.3d 546, 555 (7th Cir. 2000).  Evaluation of adverse employment actions is context driven, and the situation must be assessed both objectively and subjectively.  See White, 548 U.S. at 68.  Accordingly, the Seventh Circuit follows a

16

flexible, *practical* approach by emphasizing that an adverse employment action must be more than a "mere inconvenience" or "alteration of job responsibilities." <u>Atanus</u>, 520 F.3d at 677-78.   Examples of such significant changes include termination from employment, demotion, a material loss of benefits, diminished material responsibilities, etc.  <u>See</u> <u>De la Rama v. Illinois Dep't of Human Servs.</u>, 541 F.3d 681, 685-86 (7th Cir. 2008).  None of the alleged acts of retaliation to which Gee contends she was subjected (other than her final termination) rise to the level of severity necessary to be considered adverse employment actions.

Not only were these actions not severe, they also were not, by definition, retaliatory.  Although "reassignment with significantly different responsibilities" can be an actionable adverse employment action,  <u>See</u> <u>Stutler v. Illinois Dep't of Corrections</u>, 263 F.3d 698, 703 (7th Cir. 2001), the Supreme Court has made clear that "reassignment of job duties is not automatically actionable."  <u>White</u>, 548 U.S. at 72.  This determination is fact-specific and "should be judged from the perspective of a reasonable person in the plaintiff's position, considering 'all the circumstances.'" <u>Id.</u> (quoting <u>Oncale v. Sundowner Offshore Services, Inc.</u>, 523 U.S. 75, 81 (1998)).  In the case at bar, the City's actions were less a product of retaliatory intent than the expected result of changes that often accompany the arrival on duty of a new administration.  Plausible, reasonable explanations exist for each of the alleged retaliatory acts Plaintiff suffered, including her own inability to adapt to new policies and new supervisors.  Therefore, we hold that none

of the actions Gee has identified to which she was subjected in the course of her employment was either severe or retaliatory, with the exception of her termination.

Because Gee's termination was an adverse employment action, we address whether she has proved a causal connection between the alleged retaliatory action and her opposition to an unlawful employment practice. Gee must show either "an admission of discrimination" or a "'convincing mosaic of circumstantial evidence that allows a jury to infer intentional discrimination by the decisionmaker.'" Ridings v. Riverside Medical Center, 537 F.3d 755, 771 (7th Cir. 2008) (quoting Phelan v. Cook County, 463 F.3d 773, 779 (7th Cir. 2006)); see also Lewis v. School Dist. #70, 523 F.3d 730, 742 (7th Cir. 2008). Examples of circumstantial evidence include, *inter alia*, "suspicious timing, ambiguous statements, behavior toward or comments directed at other employees in the directed group, and other bits and pieces from which an inference of discriminatory intent might be drawn." Boumehdi v. Plastag Holdings, LLC, 489 F.3d 781, 792 (7th Cir. 2007) (citing Troupe v. May Dep't Stores Co., 20 F.3d 734, 736 (7th Cir. 1994)). Direct evidence "essentially requires an admission by the decision-maker that his actions were based upon the prohibited animus." Rogers v. City of Chicago, 320 R.3d 748, 753 (7th Cir. 2003). No such evidence has been adduced here.[9]

Furthermore, although "[s]uspicious timing, together with other facts, can

---

[9]The Seventh Circuit has held that, to be direct, the evidence "must not only speak directly to the issue of discriminatory intent, it must also relate to the specific employment decision in question." Pitasi v. Gartner Group, Inc., 184 F.3d 709, 714 (7th Cir. 1999) (citations omitted). "[H]e-said-she-said" allegations are insufficient to raise an inference of a causal connection. Stevens, 2008 U.S. Dist LEXIS 74555, at *58.

sometimes raise an inference of a causal connection." <u>Magyar</u>, 544 F.3d at 772 (citing

<u>Lalvani v. Cook County</u>, 269 F.3d 785, 790 (7th Cir. 2001), "mere temporal proximity

between the [statutorily protected activity] and the action alleged to have been taken in

retaliation for that [activity] will rarely be sufficient in and of itself to create a triable

issue." <u>Stone v. City of Indianapolis Public Utilities Div.</u>, 281 F.3d 640, 644 (7th Cir.

2002).  Here, the record shows "temporal proximity," nothing more.  The record shows

that Gee's termination was caused by her employer's legitimate concerns, not by a

prohibited animus.

     Summary judgment is appropriate where an employer demonstrates that it would

have taken the same action even without a retaliatory motive.  <u>See</u> <u>Stone v. City of</u>

<u>Indianapolis Public Utilities Div.</u>, 281 F.3d 640, 644 (7th Cir. 2002) (holding that

defendant is entitled to summary judgment when defendant presents "unrebutted evidence

that he would have taken the adverse employment action against the plaintiff even if he

had no retaliatory motive . . . because [in that case] he has shown that the plaintiff wasn't

harmed by the retaliation.").  As the City notes, each officer involved in the "door-

slamming" incident of May 16, 2007, concluded that Gee had acted towards her superior

in a manner which was completely unacceptable.  Based upon the reports of each of these

individuals, Chief Grandy elected to terminate Plaintiff's employment.  This, considered

in conjunction with Gee's admitted resistance to many of the changes instituted by the

Department from December 2006 through to her termination, yields the conclusion that

Gee's workplace difficulties sealed her fate more than any retaliatory motives or actions

on the part of the Defendant.  Thus, clearly, Gee is unable to establish her claim of relief for retaliation through the direct method of proof.

Gee may also attempt to establish retaliation through the indirect method, under which an employee must establish a *prima facie* case of retaliation by proving that she: "(1) engaged in a statutorily protected activity; (2) met her employer's legitimate expectations; (3) suffered an adverse employment action; and (4) was treated less favorably than similarly situated employees who did not engage in statutorily protected activity." Caskey v. Colgate-Palmolive Co., 535 F.3d 585 (7th Cir. July 24, 2008) (citing Nichols v. Southern Illinois University-Edwardsville, 510 F.3d 772, 784-85 (7th Cir. 2007)).  If the plaintiff successfully establishes the existence of these four factors, the burden of production shifts to the employer to demonstrate a valid non-discriminatory reason for the action it took against the plaintiff.  Id.  If the employer demonstrates such a valid reason, the burden shifts back to the plaintiff to demonstrate that the reason given was merely a pretext for the unlawful retaliation.  Hudson v. Chicago Transit Authority, 375 F.3d 552, 561 (7th Cir. 2004); see also Moser, 406 F.3d at 904.[10]

Gee does not suggest that she met her employer's reasonable expectations.  Rather, she contends, impliedly, that her employer's expectations were unreasonable.  A court's

---

[10]"A plaintiff can establish pretext by showing either that a discriminatory reason more likely motivated the employer or that the employer's proffered explanation is unworthy of credence."  Rand v. CF Industries, Inc., 42 F.3d 1139, 1145 (7th Cir. 1994).  "A 'pretext' is not merely a mistake or an imprudent reason; it is a false reason or a dishonest explanation, which, because of its falseness or dishonesty, raises a question as to whether the employer is hiding a discriminatory motive."  Rice v. Indiana State Police, 149 F.Supp.2d 573, 581 (S.D. Ind. 2001).

inquiry into whether an employer's expectations are legitimate is limited.  Dale v. Chicago Tribune Co., 797 F.2d 458, 463, n.3 (7th Cir. 1986).  The court must determine whether the employer communicated its expectations to the employee, and makes "only a cursory examination of the reasonableness of the employer's expectations."  Id.  No evidence has been adduced indicating that the City failed to communicate its expectations to Gee.  Furthermore, beyond her own assertions, Gee has presented nothing to support her argument that the City's expectations of her job performance were unreasonable.  Thus, we conclude that the City's expectations were reasonable and clearly communicated, which defeats Gee's attempt to meet this evidentiary burden via the indirect method of proof.

Additionally, Gee has not established in any sense that she was treated less favorably than similarly situated employees.  A plaintiff "must show that there is someone who is directly comparable to her in all material respects."  Patterson v. Avery Dennison Corp., 281 F.3d 676, 680 (7th Cir. 2002).  While "[a] similarly situated employee need not be 'identical,' . . . the plaintiff must show that the other employee dealt with the same supervisor, [was] subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish [her] conduct or the employer's treatment of [her]."  Caskey, 535 F.3d at 585 (citations omitted).

Although the evidence proffered in this regard references several allegedly similarly situated employees, those employees were subject to the same new workplace

21

policies and additional job duties as Gee.  Gee has presented no evidence of a difference in treatment.  Thus, she again fails to meet her burden to establish otherwise.

For all of these reasons, Defendant's Motion for Summary Judgment must be granted on Plaintiff's claim of retaliation.

### III.    Family and Medical Leave Act Claim

Lastly, Gee claims that she was disciplined for taking leave under the FMLA.  See Pl.'s Resp. at 28-29.  Gee correctly notes that the FMLA renders it unlawful for an employer to "discharge or in any other manner discriminate against any individual" for exercising rights under the FMLA.  29 U.S.C. § 2601(b).  Specifically, Gee claims that, because Sgt. Lair issued a counseling report after she returned from her FMLA leave, and because the counseling report concerned Gee's departure on FMLA leave, the discipline meted out against her violated the FMLA protections.

Gee misconstrues the counseling report issued by Sgt. Lair and also inflates the nature of rights protected by the FMLA.  Sgt. Lair's counseling report of March 21, 2007, chastised Gee for scheduling a doctor's appointment without providing adequate notice to her supervisor.  See Pl.'s Resp. at 20.  The facts related by Gee indicate that she notified Sgt. Lair of her doctor appointment just hours before she left work for the appointment. Gee Dep. at 124-26.

Although the FMLA protects an employee's right to schedule a doctor's appointment, it does not provide a right to give virtually no notice to the employer, nor

does the statute protect an employee for failing to adhere to company policy regarding the duty to provide sufficient notice. "The FMLA is not a shield to protect employees from legitimate disciplinary action by their employers if their performance is lacking in some manner unrelated to their FMLA leave." Serio v. Jojo's Bakery Restaurant, 102 F. Supp. 2d 1044, 1052 (S.D. Ind. 2000) (quoting McCown v. UOP, Inc., 1995 U.S. Dist. LEXIS 12655 (N.D. Ill. 1995)). Sgt. Lair counseled Gee for having failed to provide sufficient notice prior to going to her doctor's appointment, not for her having consulted a doctor. Thus, her claim falls outside the protections of the FMLA.

Gee's claim also fails for the same reasons her retaliation claim under Title VII fails. The standard for evaluating retaliation under the FMLA is identical to the standard used for evaluating retaliation under Title VII. See Breneisen v. Motorola, Inc., 512 F.3d 972, 979 n.3 (7th Cir. 2008). Following the analysis detailed in Part II, *supra*, the Court finds no evidentiary basis sufficient on which to establish a claim of retaliation as a matter of law. Therefore, Defendant's Motion for Summary Judgment shall also be granted as to Gee's FMLA claim.

### IV.  Conclusion:

Having fully and carefully considered the parties' arguments, the Court finds that Plaintiff has failed to provide an evidentiary basis for her claims under Title VII or the FMLA. Therefore, Defendant's Motion for Summary Judgment is GRANTED. Final judgment shall issue in accordance with this entry.

IT IS SO ORDERED.

Date: _____05/01/2009_____

_Sarah Evans Barker_
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Copies to:

Daniel LaPointe Kent
LAPOINTE LAW FIRM P.C.
dkent@lapointelawfirm.com

Mary Jane Lapointe
LAPOINTE LAW FIRM PC
maryj@lapointelawfirm.com

Ronald J. Semler
STEPHENSON MOROW & SEMLER
rsemler@stephlaw.com